# UNITED STATES DISTRICT COURT
# FOR THE DISTICT OF NEW HAMPSHIRE

| | |
|---|---|
| JING KE, derivatively on behalf of Presstek, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> JOHN H. DREYER, JEFFREY JACOBSON, DANIEL S. EBENSTEIN, LAWRENCE HOWARD, STEVEN N. RAPPAPORT, FRANK STEENBURGH, DONALD WAITE III, MICHAEL D. MOFFITT, BRIAN F. MULLANEY, EDWARD J. MARINO, MOOSA E. MOOSA, and JEFFREY A. COOK, <br><br> Defendants, <br><br> and <br><br> PRESSTEK, INC., <br><br> Nominal Defendant. | Civil Action No. 08-cv-364-JL <br><br><br> **DECLARATION OF BRIAN D. LONG, ESQUIRE IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT OF DERIVATIVE ACTION AND FOR APPROVAL OF AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES** |

I, Brian D. Long, hereby declare:

1.      I am a shareholder in the law firm of Rigrodsky & Long, P.A., counsel for Plaintiff.  Glancy Binkow & Goldberg LLP and Bouchard, Kleinman & Wright, P.A. join my firm as co-counsel for Plaintiff in this case (collectively referred to herein as "Plaintiff's Counsel").

2.      I am one of the principal attorneys working on this case (the "Litigation"), and I make this declaration in support of Plaintiff's motion for final approval of the settlement and for attorneys' fees and reimbursement of expenses.  I have personal knowledge of the facts set forth herein, and if called upon to testify thereto, could and would do so.

3.      Unless otherwise noted, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement dated November 2, 2009 (the "Stipulation") (D.I. # 20).

## I.      INTRODUCTION AND OVERVIEW OF THE SETTLEMENT

4.      This action was brought on behalf of Presstek, Inc. ("Presstek") against its Board of Directors and certain top officers alleging that Defendants cut illegal corners in Presstek's financial statements and made material misstatements to investors respecting the Company's financial performance, as well as failing to comply with environmental laws and standards in connection with Presstek's manufacturing activities.  *See* Plaintiff's Complaint (D.I. # 1).

5.      On September 24, 2008, counsel for Plaintiff and Defendants also participated in a mediation conducted by the Honorable Nicholas H. Politan (Ret.), an extremely well-respected mediator who has substantial experience mediating complex securities actions, such as this one. Following the mediation before Judge Politan, and after lengthy arm's-length negotiations, counsel for the parties reached an agreement in principle concerning the proposed settlement of the claims in the Litigation which they set forth in the Stipulation (D.I. # 20).

6.    The primary component of the Settlement is the corporate governance plan set forth in Exhibit C of the Stipulation (D.I. # 20).  The benefits conferred through the corporate governance plan include (a) adding two new independent members of the Company's Board of Directors in replacement of three members of the Board; (b) revising the charters for certain committees of the Company's Board of Directors, including the Nominating, Governance, Compensation and Audit Committees; (c) developing a revised corporate communications policy; (d) revising the Company's corporate governance principles; (e) implementing a new ethics reporting hotline; and (f) establishing a management task force to coordinate remedial actions taken to correct deficiencies in the Company's internal controls over financial reporting. *See* Exhibit C of the Stipulation (D.I. # 20).  These comprehensive measures address both the specific misconduct alleged by Plaintiff in the Litigation as well as the overall corporate culture that allowed the misconduct to take place.  In exchange for adoption of these substantial modifications, Plaintiff will release his claims against the Individual Defendants and nominal defendant Presstek.  As part of the settlement, Presstek has agreed to pay $150,000.00 for Plaintiff's Counsel's attorneys' fees and expenses and to provide notice of the settlement to its shareholders.

7.    The Litigation is related to a federal securities class action commenced in this Court on October 6, 2006 styled as *James Sloman v. Presstek, Inc., et al.,* C.A. No. 06-cv-377-JL (D.N.H.) (the "Securities Action").  On September 24, 2008, the parties to the Securities Action also participated in a mediation before the Honorable Nicholas H. Politan (Ret.) and were able to reach an agreement in principal to settle the Securities Action.  A Motion for Preliminary Approval of the Settlement and a Stipulation of Settlement in the Securities Action were filed with the Court on March 11, 2009.  The settlement in the Securities Action was preliminarily

3

approved by the Court on May 1, 2009 and the Final Judgment approving the settlement in the Securities Action was entered by the Court on July 20, 2009.

8.      Plaintiff's Counsel submits that the Settlement constitutes a very favorable result, meets all the criteria required for approval and achieved after vigorously being prosecuted by Plaintiff's counsel and defended by defense counsel. Significantly, there have been no objections to the Settlement. Moreover, the Settlement avoids the risk, delay, uncertainty, and expense of further litigation.

## II.    PLAINTIFF'S COUNSEL CONDUCTED EXTENSIVE INVESTIGATION PRIOR TO FINALIZING THE WITHIN SETTLEMENT, WHICH WAS REACHED THROUGH SUBSTANTIAL ARMS-LENTH NEGOTIATIONS

9.      Plaintiff's Counsel conducted a coordinated, efficient but extensive independent investigation of this case, including: (a) pre-suit investigation and careful analysis of the facts underlying the Litigation; (b) reviewing Presstek's public filings, annual reports, press releases, and other public statements; (c) research on the applicable law with respect to the claims asserted and the potential defenses thereto; and (d) review and analysis of internal Presstek documents, produced by Defendants to confirm the fairness of the Settlement and that the proposed corporate governance changes sufficiently addressed the wrongdoing alleged. In Plaintiff's Counsel's view, all these efforts were necessary and reasonable in connection with the prosecution of the Action.

10.     Thus, the Settlement was reached after Plaintiff's Counsel had attained – through comprehensive prosecution efforts – a thorough understanding of the strengths and weaknesses of the claims against Defendants, and were in an optimal position to negotiate and judge the terms of the proposed Settlement.

11.    Indeed, counsel for the parties negotiated over the breadth and scope of the corporate governance changes for several months, and there were numerous discussions among highly experienced and capable counsel concerning the specifics of these key corporate government measures.  These attorneys, having considered the relative strengths and weaknesses of their respective cases have reached the agreement embodied in the Settlement.  They unhesitatingly recommend its approval.

12.    Plaintiff's Counsel also engaged in confirmatory discovery wherein Plaintiff's Counsel reviewed thousands of pages of documents produced by Defendants regarding the claims asserted in the Litigation.

## III.    CLASS NOTICE

13.    On November 4, 2009, the Court granted Plaintiff's Motion for Preliminary Approval of the Settlement (the "Preliminary Approval Order") (D.I. # 26).

14.    Pursuant to the Preliminary Approval Order, on November 14, 2009, Defendants' Counsel caused the Notice to be mailed to 2,170 shareholders, brokers, banks, and other nominees identified from records provided by Presstek's stock transfer agent.  After the initial mailing, an additional 1,225 Notices were mailed to Presstek shareholders.  A total of 3,395 Notices have been mailed.  As of the filing of this memorandum, no objections to the Settlement have been filed with the Court or served on Plaintiff's counsel.

15.    The Notice contains a thorough description of the Settlement and Class members' rights to object to the settlement.  The Notice informed Presstek shareholders, inter alia: (i) that the action has been settled, subject to the Court's final approval at the final approval hearing on January 21, 2010; (ii) of the terms of the Settlement (iii) that Plaintiff's Counsel would seek from the Court reimbursement of fees and expenses of $150,000.00; and (iv) that shareholders are

entitled to be heard at the final approval hearing as to any objections to the Settlement or to Plaintiff's Counsel's fee application, provided that shareholder wishing to object file a written notice of such objection by January 7, 2010. The Notice also explained that counsel would seek attorneys' fees of plus reimbursement of litigation expenses.

16.    Plaintiff's Counsel is informed and believes that Defendants took, and are continuing to take, all reasonable steps to insure that all shareholders are provided with a copy of the Notice.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE AND ADQUEATE, AND, IN LIGHT OF THE RISKS FACED IN FURTHER LITIGATION, MERITS FINAL APPROVAL

17.    The efforts of Plaintiff's Counsel in this case have substantially benefitted Presstek and its Presstek shareholders; as a result of the litigation, Presstek will implement sweeping corporate governance changes.

18.    Before representing to the Court that the Settlement is fair, reasonable and adequate, Plaintiff's Counsel, experienced class action attorneys, evaluated the relative strengths weaknesses and risks of the Litigation and prospects of obtaining a better result at trial, one that would withstand later attack. Indeed, Plaintiff's Counsel have extensive experience in litigating complex securities actions and have negotiated scores of settlements that have been approved by courts throughout the country. *See* Exhibits A, B and C attached hereto.

19.    Although plaintiff believes that the derivative claims asserted herein are meritorious, liability is by no means a foregone conclusion. All defendants have continued to vigorously deny the claims alleged by plaintiff in this Action. Each one has continued to assert that, at all times, he or she acted properly, exercised sound business judgment and acted in good faith and in a manner that he or she reasonably believed to be in the best interests of Presstek.

Defendants asserted that their conduct was entirely proper and consistent with their duties under applicable law. Moreover, defendants are represented by experienced, skillful and well-respected law firms who would continue to vigorously defend their clients' interests.

20.    The parties would likely have briefed Defendants' motion to dismiss, discovery would be prolonged and expensive, and experts would have been retained. Plaintiff's Counsel estimate that more than a year of pre-trial discovery and preparation time remained even assuming that Plaintiff's Counsel were exclusively devoted to this litigation. Specifically, Plaintiff faced a significant obstacle in showing that his failure to make a demand on the Board of Directors was excused or otherwise futile. This issue is typically fiercely litigated, and Plaintiff expected Defendants to pursue this avenue in the event a settlement could not be reached. Plaintiff also faced the business judgment rule, which presumes that in making a business decision, actions have been taken on an informed basis, in good faith, and in the honest belief that the action was taken in the best interests of the company. Additionally, assuming that liability was eventually established, it is not at all clear what, if any, damages could be recovered on behalf of Presstek. The type and amount of damages would be sharply disputed, and it is impossible to predict which arguments on damages would find favor with the trier of fact. Moreover, whatever the outcome at trial, which Plaintiff's counsel estimates would take several weeks, there would inevitably have been post-trial motions and an appeal. Further proceedings after trial could well prolong the case for several more years, with, of course, no certainty of a recovery.

21.    As stated above, Plaintiff's Counsel obtained a thorough understanding of the factual and legal issues relating to this Action by conducting a thorough investigation relating to the allegations of the wrongdoing pertaining to each named defendant. Plaintiff's Counsel,

among other things, conducted a thorough pre-suit investigation and careful analysis of the facts

and underlying the Action; drafted complaints and other documents; reviewed documents,

including those produced in confirmatory discovery; conducted detailed analysis of documents

produced by defendants and their advisors; and engaged in skillful and successful settlement

negotiations with defendants.

22.    The institution of the corporate governance changes agreed upon will result in a

more valuable company going forward which will likely translate to an increase in market

capitalization.[1]

23.    Based on the above, Plaintiff's Counsel believe that the Settlement confers a

substantial benefit upon Presstek and its shareholders, is fair, reasonable and adequate.

Therefore, Plaintiff and his counsel have concluded that it is in the best interest of Plaintiff and

Presstek shareholders to settle the action on the terms described in the Stipulation.

## V.    THE SETTLEMENT INCLUDES AN AGREEMENT TO PAY PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND EXPENSES

24.    This Litigation was pursued on a fully contingent basis.  As part of the Settlement

– and only after the primary component of the Settlement (the agreement to institute corporate

governance reforms) was decided – the parties, with the assistance of Judge Politan, heavily

negotiated the amount of fees and expenses Presstek will pay to Plaintiff's Counsel for their

substantial work for the benefit of Presstek and its shareholders.  In this regard, Presstek has

agreed to pay Plaintiff's Counsel's attorneys' fees and expenses in an aggregate amount of

$150,000.00, based on Presstek's perceived value of the Settlement.

---

[1] Furthermore, the benefit to Presstek is noteworthy; the changes have and will continue to increase Presstek's overall value.

25.    The result reflects a compromise reached through arm's-length bargaining by informed parties before the parties committed significant resources.  The fee negotiations were based upon a knowledgeable analysis of the appropriate fee for the benefits achieved and reflects Presstek's valuation of the benefits provided to it through the Settlement.

26.    Summaries of the background and experience of Plaintiff's Counsel are attached hereto as Exhibits A and B, respectively.

27.    The following is a chart reflecting Plaintiff's Counsel's total lodestar:

| Firm | Total Time | Lodestar |
|---|---|---|
| Rigrodsky & Long, P.A. | 186.25 hours | $81,090.00 |
| Glancy Binkow & Goldberg LLP | 88.20 hours | $38,924.00 |
| Bouchard, Kleinman & Wright, P.A. | 14.60 hours | $2,029.50 |
| TOTAL | 289.05 hours | $122,043.50 |

28.    The following is an expense chart reflecting Plaintiff's Counsel's total expenses which were reasonably incurred in prosecuting the Litigation:

| Firm | Expenses |
|---|---|
| Rigrodsky & Long, P.A. | $2,448.99 |
| Glancy Binkow & Goldberg LLP | $0.00 |
| Bouchard, Kleinman & Wright, P.A. | $791.98 |
| TOTAL | $3,240.97 |

I declare under penalty of perjury under the laws of the State of Delaware, that the foregoing declaration is true and correct.

Executed this 15th day of January, 2010, at Wilmington, Delaware.

BRIAN D. LONG

# EXHIBIT A

# RIGRODSKY & LONG, P.A.

Attorneys at Law                                                                    www.rigrodskylong.com

Seth D. Rigrodsky
Admitted in  DE, NY

Timothy J. MacFall
Admitted in NY

Brian D. Long
Admitted in DE, PA

Marc A. Rigrodsky
Admitted in CT, DC

## FIRM RESUME

### THE FIRM

Rigrodsky & Long, P.A. (the "Firm"), is a law firm specializing in the representation of institutional and individual shareholders in corporate and securities class action litigation, in addition to shareholder derivative and consumer fraud litigation.   The Firm's offices are located in Wilmington, Delaware, and Garden City, New York. The Firm regularly practices before the Delaware Court of Chancery and in state and federal courts located throughout the United States.   The Firm's attorneys have decades of progressive and responsible experience conducting both complex corporate and class action litigation.

The mission of the Firm is to provide legal services of the highest quality to investors of both private and publicly-traded corporations in litigation involving corporate governance, shareholder rights, violations of federal and state securities laws, and consumer rights laws, through the dedicated efforts of a team of highly skilled professionals working together and drawing upon significant expertise and practical experience.

### THE FIRM'S ATTORNEYS

**Seth D. Rigrodsky,** a shareholder in the Firm, has over eighteen years of legal experience.  Mr. Rigrodsky is a *magna cum laude* graduate of both Brandeis University and the Georgetown University Law Center.   While at Georgetown, he served as Articles Editor of the *Georgetown Law Review.*  Mr. Rigrodsky began his legal career as a law clerk to the Honorable Andrew G.T. Moore, II, of the Delaware Supreme Court. Following his clerkship, Mr. Rigrodsky was associated with the law firms of Wachtell, Lipton, Rosen & Katz in New York City, and Morris, Nichols, Arsht & Tunnell in Wilmington, Delaware, where he concentrated his practice on corporate and complex business litigation.  In 1994, Mr. Rigrodsky joined Morris and Morris in Wilmington, Delaware, where he became a partner beginning in January 2000, and represented investors in numerous federal and state class and shareholder lawsuits. Mr. Rigrodsky joined the law firm Milberg LLP in 2001 and founded its Delaware office.   Mr. Rigrodsky is a member of the bars of the States of Delaware and New York, the United States District Courts for Delaware and the Southern District of New York, and the United States Courts of Appeals for the Second, Third, and Fourth Circuits.

919 North Market Street, Suite 980
Wilmington, Delaware  19801
T 302.295.5310

585 Stewart Avenue, Suite 304
Garden City, New York  11530
T 516. 683.3516

**Brian D. Long,** a shareholder in the Firm, has over ten years of experience representing plaintiffs in complex class action litigation in state and federal courts throughout the nation.  Mr. Long is a graduate of Franklin & Marshall College in Lancaster, Pennsylvania, and of the Duquesne University School of Law in Pittsburgh, Pennsylvania.  Upon graduation from law school, Mr. Long was associated with the firm of Roda & Nast, P.C., also in Lancaster, where he litigated mass tort, consumer fraud, and antitrust class action litigation.  After three years at Roda & Nast, Mr. Long moved to the Wilmington, Delaware office of Chimicles & Tikellis, LLP.  While at the Chimicles firm, Mr. Long focused his practice on litigating both transactional and shareholder derivative cases in the Delaware Court of Chancery.  In addition to litigating that firm's proprietary cases, Mr. Long also gained valuable experience serving as local counsel to out-of-town firms.  In March of 2005, Mr. Long moved to the Wilmington office of Milberg LLP, where he represented both institutional and individual investors in complex corporate litigation.  Mr. Long became a shareholder of the Firm upon its founding in August 2006.  Mr. Long is admitted to practice before the bars of the State of Delaware and the Commonwealth of Pennsylvania.  He also is admitted to practice in the United States Court of Appeals for the Third Circuit and the United States District Courts for the Eastern and Western Districts of Pennsylvania and the District of Delaware.

**Timothy J. MacFall,** has more than twenty three years of legal experience.  Mr. MacFall is a *cum laude* graduate of Brooklyn College of the City University of New York and a graduate of Brooklyn Law School.  Upon his graduation from law school, Mr. MacFall served as an Assistant District Attorney in the Narcotics Bureau of the Kings County District Attorney's Office.  In 1987, he joined the Immigration & Naturalization Service as a Trial Attorney in the Alien Criminal Apprehension Program.  Mr. MacFall was subsequently cross-designated as a Special Assistant United States Attorney for the Eastern District of New York, Criminal Division.  In 1988, Mr. MacFall was appointed as a Special Assistant United States Attorney in the Civil Division of the United States Attorney's Office for the Southern District of New York.  As a government attorney, Mr. MacFall tried numerous cases to verdict and argued more than a dozen cases before the United States Court of Appeals for the Second Circuit.  Mr. MacFall has focused his practice primarily on complex class action litigation in state and federal courts since 1992, when he became associated with the firm Harwood Feffer.  Mr. MacFall was subsequently associated with the Law Offices of Curtis V. Trinko, LLP, where he became a partner in 1994.  In 2000, Mr. MacFall became of counsel to Bernstein Liebhard LLP.  He became a partner at Bernstein Liebhard LLP in 2005, representing individual investors, union pension funds, and state pension funds in transactional and federal securities class actions.  Mr. MacFall joined Rigrodsky & Long, P.A. in April 2009.  Mr. MacFall is a member of the bar of the State of New York and is also admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York, the District of Colorado, and the United States Court of Appeals for the Second Circuit.

*Marc A. Rigrodsky,* Of Counsel to the Firm, has twenty-six years of legal experience. Mr. Rigrodsky is a graduate of Cornell University and a *summa cum laude* graduate of the Benjamin N. Cardozo School of Law. While at Cardozo, he served on the *Cardozo Law Review*. Mr. Rigrodsky began his legal career as a law clerk to the Honorable Thomas J. Meskill, of the United States Court of Appeals for the Second Circuit. Following his clerkship, Mr. Rigrodsky was associated with the law firm of Robinson & Cole in Hartford, Connecticut. He worked for the Department of the Navy from 1986-1988, the Department of the Treasury from 1992-2003, and the Department of Transportation from 2003-2007. He was part of Digital Equipment Corporation's law department from 1989-1991, and worked as a full-time consultant for the District of Columbia Retirement Board from 2007-2009. Mr. Rigrodsky is a member of the bars of the State of Connecticut, the District of Columbia and is also admitted to practice before the United States District Court for the District of Connecticut and the United States Supreme Court.

SELECT FIRM ACCOMPLISHMENTS

**In re Lear Corp. S'holders Litig.,**
**Cons. C.A. No. 2728-VCS (Del. Ch.)**

The Firm served as co-chair of plaintiffs' Executive Committee in this class action brought on behalf of the public shareholders of Lear Corporation ("Lear" or the "Company") in connection with its sale to American Real Estate Partners, L.P. ("AREP"). The Firm represented Classic Fund Management AG (Lear's sixth largest holder) who, along with other significant shareholders, had expressed their concern regarding the price AREP offered to acquire Lear. Despite the opposition voiced by its major institutional shareholders, Lear entered into a merger agreement with AREP, wherein the sale process was tilted in favor of AREP. Among other things, Lear could not terminate the merger agreement without first providing the other bidder's terms to AREP and AREP had the right to top any other offer. As a result, plaintiffs alleged that no rival bidder was likely to emerge. Moreover, plaintiffs believed that the Company's intrinsic value was more than the $36 per share offered by AREP. After the Court consolidated the Lear actions in February 2007, the Firm obtained a Preliminary Injunction, which prohibited a stockholder vote on the merger until Lear made additional disclosures. *(In re Lear Corp. S'holders Litig.,* **926 A.2d 94 (Del. Ch. 2008))**. As a result of the Firm's efforts, Lear made substantial and remedial disclosures in its June 18, 2007 Proxy supplement, which allowed stockholders to consequentially reject the merger in July 2007. In March 2008, after the shareholders rejected the proposed merger, the Court dismissed the class action as moot.

3

**In re The Topps Co., Inc. S'holders Litig.,**
**Cons. C.A. No. 2786-VCS (Del. Ch.)**

The Firm served as co-lead counsel for plaintiffs in this class action brought on behalf of the public shareholders of The Topps Company, Inc. ("Topps" or the "Company") in connection with its sale to Madison Dearborn Partners and Michael Eisner's The Tornante Company, LLC (collectively, "Tornante"). Plaintiffs alleged that the transaction lacked many of the hallmarks of financial fairness and that the price was unfair and achieved through a process designed to benefit Tornante, to the detriment of Topps' public shareholders. The Firm moved the Court to issue a preliminary injunction to stop the deal. In June 2007, the Court issued a landmark decision granting plaintiffs' injunction motion. *(In re The Topps Co., Inc. S'holders Litig.,* **926 A.2d 58 (Del. Ch. 2007))**. The Court enjoined the merger vote until after Topps granted the competing bidder The Upper Deck Company ("Upper Deck") a waiver of the standstill agreement to make a tender offer, and allowed Upper Deck to communicate with Topps' stockholders about its bid and its version of events.

**Manville Personal Injury Trust v. Blankenship,**
**C.A. No. 07-C-1333 (W. Va.)**

The Firm served as counsel for plaintiff in this shareholder derivative action brought on behalf of Massey Energy Company ("Massey" or the "Company") against its board of directors and certain of its officers for breach of fiduciary duties arising out of the defendants' alleged conscious failures to cause Massey to comply with applicable environmental and worker-safety laws and regulations. Plaintiff argued that defendants caused severe injury to the Company by consciously ignoring Massey's legal obligations to comply with federal and state law, thereby exposing the Company to a substantial threat of monetary liability for violations. This litigation, filed in the Circuit Court of Kanawha County, West Virginia, caused Massey to implement significant corporate reforms, including improvements to its corporate policies. The parties reached a settlement that, among other things, required Massey to: (i) implement limitations on the length of service of and enhanced membership and meeting attendance requirements for members of the Safety, Environmental and Public Policy Committee ("SEPPC") of the board of directors; (ii) grant the SEPPC authority to retain independent, outside consultants to assist it with its duties; (iii) require that the SEPPC recommend enhancements to the Company's safety and environmental procedures and reporting, including shareholder reporting; (iv) establish certain safety and environmental compliance oversight positions; and (v) implement enhanced employee reporting mechanisms for safety and environmental issues. In June 2008, the Circuit Court approved the settlement. *Manville Personal Injury Trust v. Blankenship,* *C.A. No. 07-C-1333 (W. Va. Jun. 30, 2008) (Order)*.

*In re Chiquita Brands Int'l, Inc.,*
**C.A. No. 08-01916-MD (S.D. Fla.)**

The Firm serves as counsel for plaintiff City of Philadelphia Public Employees' Retirement System in this shareholder derivative and class action brought on behalf of the public shareholders of Chiquita Brands International ("Chiquita" or the "Company"). Plaintiffs allege that the Company repeatedly and systematically violated federal law prohibiting transactions with recognized global terrorist organizations. Plaintiffs allege that these breaches of fiduciary duty, along with the resultant violations of federal law, have substantially injured the Company in that, among other things, the Company consented to a criminal guilty plea. In September 2008, counsel filed their Verified Consolidated Shareholder Derivative Complaint.

*City of Tallahassee Retirement System v. Akerson,*
**Index No. 601535/2008 (N.Y. Supr. Ct.)**

Rigrodsky & Long serves as counsel for plaintiff City of Tallahassee Retirement System in this shareholder derivative action brought on behalf of the public shareholders of American Express Company ("American Express" or the "Company"). Plaintiff alleges that the Company through American Express Bank International ("AEBI") and American Express Travel Related Services Company, Inc. ("TRS") engaged in knowing, repeated, and systemic violations of criminal and regulatory laws and regulations governing bank secrecy and anti-money laundering ("AML") activities. As a consequence, AEBI and TRS became vehicles for the laundering of millions upon millions of dollars in the cash proceeds of illegal narcotics transactions. After federal and state law enforcement authorities uncovered the serious and knowing control failures, AEBI and TRS entered into settlement agreements with authorities that included the filing of deferred criminal charges against AEBI and the payment of tens of millions of dollars in fines.

*County of York Employees Ret. Plan v. Merrill Lynch & Co., Inc.,*
**C.A. No. 4066-VCN (Del. Ch.)**

The Firm serves as lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Merrill Lynch & Co. ("Merrill") in connection with its sale to Bank of America Corporation ("BofA"). Plaintiff County of York Employees Retirement Plan alleged that the individual defendants hastily agreed to sell the Company over the course of a weekend without adequately informing themselves of the true value of the Company or the feasibility of securing a viable alternative transaction that would be more beneficial to shareholders than the Proposed Acquisition. On October 28, 2008, the Delaware Court granted, in part, plaintiff's motion to expedite discovery and denied defendants' motion to stay or dismiss. *(County of York Employees Ret. Plan v. Merrill Lynch & Co., Inc.,* **C.A. No. 4066-VCN, 2008 Del. Ch. LEXIS 162 (Del. Ch. Oct. 28, 2008)).** Subsequently, the Firm engaged in expedited discovery. After engaging in arm's-length negotiations, the parties reached a settlement whereby defendants' made

additional, substantive disclosures in their Definitive Proxy. Thereafter, the shareholders of Merrill and BofA approved the merger.

### *In re Nat'l City Co. S'holders Litig.,*
### **C.A. No. 4123-CC (Del. Ch.)**

The Firm serves as lead counsel for plaintiffs in this class action brought on behalf of the public shareholders of National City Corporation, ("National City" or the "Company") in connection with its sale to The PNC Financial Services Group, Inc. ("PNC"). Plaintiffs allege that the individual defendants breached their fiduciary duties by: (i) agreeing to sell National City without first taking steps to ensure that plaintiffs and class members would obtain adequate, fair and maximum consideration under the circumstances; (ii) engineering the Proposed Acquisition to benefit themselves and/or PNC without regard for National City's public shareholders; (iii) failing to disclose all material information necessary to enable shareholders to cast an informed vote on the Proposed Acquisition, such as a recent change in the tax laws which would allow PNC to enjoy a tax benefit of approximately $5.1 billion as a direct result of the acquisition of National City, essentially paying for the Proposed Acquisition; and (iv) agreeing to deal terms that unreasonably hinder the possibility of a superior priced offer emerging for the Company. Following the consolidation of related actions, plaintiffs engaged in expedited discovery. Subsequently, the National City and PNC shareholders approved the merger.

### *David B. Shaev IRA v. Sidhu,*
### **No. 00983, November Term 2005 (Phila. C.C.P., Commerce Div.)**

The Firm served as co-lead counsel in this shareholder derivative and class action brought on behalf of the public shareholders of Sovereign Bancorp, Inc. ("Sovereign"). Sovereign completed its two-part transaction (the "Santander Transaction") whereby Sovereign sold 19.8% of the Company to Banco Santander Central Hispano, S.A., and used the proceeds to fund its acquisition of Independence Community Bancorp. Plaintiffs alleged that Sovereign's board of directors purposely structured the Santander Transaction to be below the 20% change in control threshold established by the New York Stock Exchange. Additionally, plaintiffs alleged the board had improper motives of entrenchment and participated in protection of their own self interests and the improper subversion of a Proxy contest launched by Sovereign's largest shareholder, Relational Investors, LLC. Following the close of the sale in May 2006, the Firm helped negotiate a settlement of the litigation, which conferred substantial benefits on the Company and Class Members, including substantial corporate governance changes adopted by the Company. The Court approved the settlement. *David B. Shaev IRA v. Sidhu,* No. 00983 (Phila C.P., Commerce Div. Oct. 28, 2008) (Order).

***In re Everlast Worldwide Inc. S'holders Litig.,***
**Cons. C.A. No. 3077-VCL (Del. Ch.)**

The Firm served as co-lead counsel in this class action brought on behalf of the public shareholders of Everlast Worldwide Inc. ("Everlast" or the "Company") in connection with its sale to Sports Direct International, Plc and Brands Holdings Limited. Plaintiffs alleged that the merger consideration was unfair in a number of respects, including the absence of shareholders' ability to participate in any "upside" in the Company's future financial performance, a factor which plaintiffs alleged made the merger less advantageous to the Company's shareholders than a competing acquisition offer that had been made to the Company. As result of the Firm's negotiations with defendants, the parties reached a settlement by which Everlast agreed to and made additional, curative disclosures in its proxy statements regarding the process by which the Company's board of directors elected to pursue the merger. The Court approved the settlement. ***In re Everlast Worldwide Inc. S'holders Litig.,*** **Cons. C.A. No. 3077-VCL (Del. Ch. Dec. 20, 2007) (Order).**

***Helaba Invest Kapitalanlagegsellschaft mbH v. Fialkow,***
**C.A. No. 2683-N (Del. Ch.)**

The Firm served as counsel for lead plaintiff Helaba Invest Kapitalanlagegsellschaft mbH (a European institutional investor) in this class action on behalf of the public shareholders of National Home Health Care Corp. ("National Home" or the "Company"). The litigation sought to enjoin the proposed acquisition of National Home by a consortium composed of Angelo, Gordon & Co. and Eureka Capital Partners ("Angelo Gordon") for inadequate consideration. The plaintiff alleged that certain defendants, who collectively held more than fifty percent of the National Home's outstanding stock, agreed to vote in favor of the deal and that certain of these defendants would receive benefits from National Home and Angelo Gordon not shared by the National Home's minority, public shareholders. As a result of the Firm's negotiations with defendants, the parties reached a settlement by which additional, curative disclosures were made in National Home's amended proxy statements and after holding meetings with the Company's special committee and board of directors, Angelo Gordon agreed to pay an additional $1.35 per share, a financial benefit of more than $3.76 million to National Home's shareholders. In addition, even after the Merger Agreement was approved, the Firm continued to advocate on behalf of shareholders, and Gordon agreed to allow the Company to increase its next quarterly dividend, representing approximately $260,000 in additional value. The Court approved the settlement. ***Helaba Invest Kapitalanlagegsellschaft mbH v. Fialkow,*** **C.A. No. 2683-N (Del. Ch. Mar. 12, 2008) (Order).**

*In re Jacuzzi Brands, Inc. S'holders Litig.,*
**Cons. C.A. No. 2477-CC (Del. Ch.)**

The Firm served as co-chair of plaintiffs' Executive Committee on behalf of the public shareholders of Jacuzzi Brands, Inc. ("Jacuzzi"). Among other things, plaintiffs alleged that the acquisition of Jacuzzi by Apollo Management VI, L.P. was for inadequate consideration and through coercive means. After extensive investigation and discussions with defendants, the Firm negotiated a significant settlement including additional disclosures made by Jacuzzi in its Definitive Proxy Statement and amendments to the Merger Agreement challenged in the case. The Court approved the settlement. *In re Jacuzzi Brands, Inc. S'holders Litig.,* **Cons. C.A. No. 2477-CC (Del. Ch. Jun. 26, 2007) (Order).**

*Mandell v. Ablest, Inc.,*
**C.A. No. 2958-VCN (Del. Ch.)**

The Firm served as co-lead counsel in this class action brought on behalf of the public shareholders of Ablest, Inc. ("Ablest" or the "Company") in connection with its sale to Koosharem Corporation. Plaintiffs alleged that the merger consideration paid to class members was unconscionable, unfair and grossly inadequate because, among other things, the consideration agreed upon did not result from an appropriate consideration or attempt to ascertain the true value of the Company through an open bidding or auction mechanism. As result of the Firm's negotiations with defendants, Ablest agreed to supplement its proxy statement with additional disclosures regarding the sale process to its shareholders, including terms of the fee agreement and financial projections used in conjunction with the merger. The Court approved the settlement. *Mandell v. Ablest, Inc.,* **C.A. No. 2958-VCN (Del. Ch. Dec. 18, 2007) (Order).**

*Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG,*
**C.A. No. 3476 (GEL) (S.D.N.Y.)**

The Firm served as co-lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Converium Holding AG ("Converium" or the "Company") and holders of the Company's American Depository Shares against SCOR S.A. ("SCOR") and Patinex AG ("Patinex") in connection with SCOR and Patinex's acquisition of Converium. Plaintiff alleged that the acquisition was unfair to the Class. As a result of the Firm's action, SCOR agreed to settle the litigation by increasing its offer price by 7.9%, or $259.6 million. Citing the efforts of plaintiff's counsel, the Court approved the settlement. *Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG,* **C.A. No. 3476 (GEL) (S.D.N.Y. Feb. 8, 2008) (Order).**

**Norfolk County Retirement System v. Jos. A. Bank Clothiers, Inc.,**
**C.A. No. 3443-VCP (Del. Ch.)**

Rigrodsky & Long serves as counsel for plaintiff Norfolk County Retirement System in this action against Jos. A. Bank Clothiers, Inc. ("Jos. A. Bank" or the "Company") seeking relief under 8 *Del. C.* § 220 to Compel Inspection of the Company's books and records.  Plaintiff demanded inspection of the Company's books and records in connection with the events, circumstances, and transactions underlying the Company's issuance of, beginning in December 2005 and through June 2006, a series of statements which allegedly omitted the Company's knowledge of excessive levels of inventory of the Company's Fall/Winter 2005 clothing line.  These statements falsely reassured Jos. A. Bank's investors that its gross profit margins would increase substantially throughout the final two quarters of fiscal 2005 and into the first quarter of fiscal 2006. As a result of the Company's concealment and upon the revelation of the Company's true financial condition, Jos. A. Bank's stock plummeted 29% by the close of trading on June 8, 2006.

**Plymouth Co. Ret. Sys. v. MacDermid, Inc.,**
**C.A. No. 2006CV9741 (Colo. Dist. Ct. - Denver Co.)**

The Firm served as co-lead counsel on behalf of lead plaintiff Plymouth County Retirement System and the class of MacDermid, Inc. ("MacDermid" or the "Company") shareholders.  This case was a class action arising from the proposed acquisition of MacDermid by Daniel H. Leever (the Company's Chairman and Chief Executive), Court Square Capital Partners II, L.P., and Weston Presidio V, L.P.  Among other things, plaintiff alleged that the Company's proxy did not disclose that the directors who approved the proposed transaction would receive more than $17 million for certain options, the amount or value that certain directors would be able to invest after completion of the proposed transaction, and certain facts and assumptions underlying the Fairness Opinion.  As a result of the Firm's negotiations with defendants, MacDermid made additional disclosures in its Definitive Proxy Statement, including but not limited to, the compensation and involvement of key company insiders, information regarding competing bidders and financial analysis by Merrill Lynch.  The Court approved the settlement. *Plymouth Co. Ret. Sys. v. MacDermid, Inc.,* **C.A. No. 2006CV9741 (Colo. Dist. Ct. – Denver Co. Dec. 10, 2007) (Order).**

**Schultze Asset Mgmt. LLC v. Washington Group Int'l, Inc.,**
**C.A. No. 3261-VCN (Del. Ch.)**

The Firm served as co-counsel for plaintiff in this class action brought on behalf of the public shareholders of Washington Group International, Inc. ("Washington Group" or the "Company") in connection with its sale to URS Corporation.  Plaintiff alleged that the transaction was financially and procedurally unfair to Washington Group's shareholders.  In addition, plaintiff alleged that the Company's Definitive Proxy Statement was materially misleading because, among other things, it failed to explain

why Washington Group used overly conservative financial projections to support the Fairness Opinion issued in connection with the transactions. As result of the Firm's negotiations with defendants, Washington Group agreed to and made additional curative disclosures in the Definitive Proxy Statement. Specifically, the Company agreed to disclose additional information concerning the potential impact of existing contract claims asserted by the Company and their impact on the Company's valuation, the Company's efforts to solicit potential acquirers, and the analyses performed by Goldman Sachs (the Company's financial advisor) in support of the Merger, among other things. Additionally, Washington Group amended the Merger Agreement whereby it increased the amount of consideration paid to each Washington Group shareholder. The Court approved the settlement. *Schultze Asset Mgmt. LLC v. Washington Group Int'l, Inc.*, **C.A. No. 3261-VCN (Del. Ch. May 22, 2008) (Order).**

*In re Am. Pharmaceutical Partners, Inc. S'holders Litig.*,
**Cons. C.A. No. 1823-VCL (Del. Ch.)**

The Firm served as a member of plaintiffs' Executive Committee in this class action brought on behalf of the public shareholders of American Pharmaceutical Partners, Inc. ("APP" or the "Company") in connection with its acquisition of American BioScience, Inc. Plaintiffs alleged that the acquisition would have diluted the voting rights of each share of the Company, to the detriment of minority shareholders. Plaintiffs also asserted claims derivatively on behalf of the Company, which was directly harmed, among other things, when the Company's investors fled *en masse* upon announcement of the merger, and because the merger transferred the bulk of the Company's value to defendant Dr. Patrick Soon-Shiong for allegedly inadequate consideration. In April 2006, the merger was completed and subsequently plaintiffs filed their First Consolidated Class Action Complaint in June 2006. After nearly 18 months of arm's-length negotiations and the production of thousands of pages in documents in response to plaintiffs' subpoenas, the parties agreed to mediation and an agreement-in-principle to settle the action. In July 2008, the parties agreed to settle the action for $14.3 million, to be paid by defendants, which represents approximately $0.60 per damaged minority share for the shareholders. The Court approved the settlement. *In re Am. Pharmaceutical Partners, Inc. S'holders Litig.*, **Cons. C.A. No. 1823-VCL (Del. Ch. Dec. 16, 2008) (Order).**

*Sheetmetal Workers' Nat'l Pension Fund v. Hill*,
**C.A. No. 07-cv-2269 (RBK) (D.N.J.)**

The Firm served as counsel for plaintiff Sheetmetal Workers' National Pension Fund in this consolidated shareholder derivative and class action brought on behalf of the public shareholders of Commerce Bancorp, Inc. ("Commerce" or the "Company") in connection with two regulatory investigations of Commerce and its subsequent acquisition by PNC Bank in a merger transaction (the "Merger"). Plaintiff alleged that the members of the board of directors of Commerce violated their fiduciary duties to the Company by approving a course of conduct whereby Commerce made unsafe loans

and engaged in questionable related party transactions with its officers and directors and that the price offered in the Merger was unfair. Sheetmetal requested the Court to issue an injunction to stop the Merger and sought expedited discovery. After extensive discovery, the Firm helped negotiate a settlement, which obtained a $77 million reduction in the termination fee, and numerous additional disclosures in the Definitive Proxy Statement. The Court approved the settlement. *Sheetmetal Workers' Nat'l Pension Fund v. Hill,* C.A. No. 07-cv-269 (D.N.J. May 9, 2008) (Order).

*Virgin Islands Gov. Employees' Ret. Sys. v. Alvarez,*
**C.A. No. 3976-VCS (Del. Ch.)**

The Firm served as counsel for plaintiff in this derivative and class action brought on behalf of the public shareholders of UnionBanCal Corporation ("UnionBanCal" or the "Company") against its Board of Directors and certain officers for breach of fiduciary duties arising from the defendants' repeated and systematic failure to implement anti-money laundering procedures and policies, in violation of federal laws including the Bank Secrecy Act. The class action claims arose in connection with a tender offer launched by Mitsubishi UFJ Financial Group ("MUFG") and Bank of Tokyo-UFJ Ltd. Plaintiff Virgin Islands Government Employees' Retirement System alleged that the merger consideration was unfair in a number of respects, including the fact that the Company's share price was substantially depressed as a result of defendants' egregious failures to comply with anti-money laundering laws and regulations. The Firm coordinated efforts with a similar litigation in California, reviewing document production, deposing key witnesses, and negotiating a settlement in which UnionBanCal agreed to and made additional material disclosures concerning the transaction. The Court approved the settlement. *Virgin Islands Gov. Employees' Ret. Sys. v. Alvarez,* C.A. No. 3976-VCS (Del. Ch. Dec. 2, 2008) (Order)).

*Wilkenfeld v. Knowles,*
**Docket No. L 06445-06 (N.J. Super. Ct. Law Div.)**

The Firm serves as Court-appointed chair of plaintiffs' committee on behalf of Metrologic, Inc. ("Metrologic" or the "Company") shareholders. This case is a class action that arose from the transaction to cash out the Company's minority shareholders in a merger for alleged inadequate consideration, negotiated through coercive means. Plaintiffs allege that the board of directors unanimously approved Metrologic's acquisition by entities owned and affiliated with Francisco Partners II, L.P., C. Harry Knowles (the Company's founder and Chairman of the Board), Elliott Associates, L.P. and Elliott International, L.P. ("Elliott"). C. Harry Knowles and Elliott (the "Knowles Group") are together controlling shareholders of Metrologic. The Knowles Group entered into voting agreements to vote their 49% in favor of the deal in addition to an undisclosed group of the Company's directors and executive officers that agreed to vote their 1.1% in favor of the deal. Therefore, 50.1% of the shares were contractually committed to voting in favor of the transaction. Furthermore, the proxy allegedly failed

to disclose that even though the Knowles Group was receiving the same consideration for their shares being cashed out, they were also receiving additional consideration for the shares that they rolled over for equity in the surviving entity.  This case is currently in the discovery stage.

**In re Wind River Systems, Inc. S'holder Litig.,**
**Consol. C.A. No. 4674-VCP (Del. Ch.)**

Rigrodsky & Long served as lead counsel for the Delaware plaintiffs in this class action brought on behalf of the public shareholders of Wind River Systems, Inc. ("Wind River" or the "Company") in connection with its sale to Intel Corporation ("Intel").  Plaintiffs alleged that the consideration to be paid to plaintiffs and the Class was unfair and grossly inadequate because, among other things, the intrinsic value of Wind River is materially in excess of the amount offered in the transaction, giving due consideration to the Company's anticipated operating results, net asset value, cash flow profitability and established markets and that Intel aided and abetted Wind River's board of directors' breaches of fiduciary duty.  Plaintiffs also alleged that the Company's Solicitation/Recommendation Statement filed with the United States Securities and Exchange Commission ("SEC") on Form SC 14D-9 on June 11, 2009 (the "14D-9") and in Intel's Tender Offer Statement filed with the SEC on Form SC TO-T on June 11, 2009 contained materially incomplete and misleading disclosures concerning the transaction.  The Firm immediately moved the Court for a Preliminary Injunction to stop the transaction and for Expedited Discovery.  Defendants countered by filing a motion to Stay and/or Dismiss the Delaware actions in favor of the earlier filed California actions.  Plaintiffs responded by arguing that a *forum non conveniens* analysis should apply because the Delaware action was filed in relatively the same time period as the California actions.  The Court held that there was no prejudicial delay because the California actions had not progressed far beyond the Delaware actions, and granted plaintiffs' motion for expedited discovery and set a date for a preliminary injunction hearing.  Moreover, Vice Chancellor Parsons noted that in light of the events from the announcement of the merger to the filing of the 14D-9, plaintiffs' delay was minimal and in line with the Court's "long expressed . . . 'public policy interest favoring the submission of thoughtful, well-researched complaints – rather than ones regurgitating the morning's financial press.'"  *In re Wind River Systems, Inc. S'holder Litig.*, **Consol. C.A. No. 4674-VCP (Del. Ch. June 26, 2009) (Slip. Op.).**  As a result of the Firm's negotiations with defendants, the parties ultimately reached a settlement whereby Wind River agreed to make additional, corrective disclosures in its 14D-9 regarding the process surrounding and the details by which the Company pursued the merger.

**In re Wyeth S'holders Litig.,**
**Consol. C.A. No. 4329-VCN (Del. Ch.)**

Rigrodsky & Long served as Co-Lead Counsel for plaintiffs in this class action brought on behalf of the public shareholders of Wyeth ("Wyeth" or the "Company") in

connection with its sale to Pfizer, Inc. ("Pfizer").  Plaintiffs alleged that Wyeth's board of directors breached their fiduciary duties of loyalty, good faith, due care, and full and fair disclosure to Wyeth's shareholders by: (a) agreeing to sell Wyeth without first taking steps to ensure that plaintiffs and Class members would obtain adequate, fair, and maximum consideration under the circumstances; (b) soliciting shareholder approval for the transaction through defective, incomplete and/or misleading proxy materials; (c) failing to fully disclose facts about other higher offers to buy Wyeth, and other material information; (d) approving an excessively high termination fee should Wyeth terminate the merger; (e) failing to obtain a higher price for Wyeth shares, even though the shares should command a "scarcity premium;" and (f) failing to obtain any downside protection in the form of a floor or collar in the event that the value of Pfizer's stock declined prior to the consummation of the transaction.  Upon defendants' filing of their Joint Preliminary Proxy Statement and Registration Statement with the SEC on Form S-4 (the "S-4"), plaintiffs' immediately moved the Court for a Preliminary Injunction to stop the transaction and for expedited discovery.  Defendants sought to have the case proceed in a single jurisdiction, either Delaware or New Jersey.  The Delaware Court of Chancery ruled that the case should go forward in Delaware.  As a result of the Firm's negotiations with defendants, the parties reached a settlement whereby Wyeth and Pfizer agreed to make additional, corrective disclosures in its S-4 regarding the process surrounding and the details by which the Company pursued the merger.

*City of Taylor Gen. Employees Ret. Sys.  v. Taurel,*
**C.A. No. 08-1554 (E.D.N.Y.)**

The Firm serves as counsel for plaintiff in this shareholder derivative and class action brought on behalf of the public shareholders of Eli Lilly & Company ("Eli Lilly" or the "Company") in connection with the Company's alleged course of systemic and sustained misconduct that allowed the Company to market anti-psychotic medications for "off label" usage, which caused thousands of individuals to suffer horrific side effects, including the onset of diabetes.  Plaintiff alleges that Eli Lilly and the individual defendants knew of these risks, but ignored them to garner billions of dollars in illegitimate sales for the Company, thus violating their fiduciary duties to the Company and substantially injuring the Company.  In April 2008, the Firm filed a Verified Shareholder Derivative Complaint, and has since coordinated and consolidated with similar actions in Indiana.

*In re  MBNA Corp. Sec. Litig.,*
**Cons. C.A. No. 05-CV-00272 (GMS) (D. Del.)**

The Firm serves as liaison counsel for lead plaintiff and the members of the putative class in this securities class action brought on behalf of all persons who purchased or otherwise acquired the publicly traded securities of MBNA Corp. ("MBNA" or the "Company") during the period January 20, 2005 through April 20, 2005, inclusive (the

"Class Period"). Plaintiffs alleged that, (i) MBNA deceived the market by reporting that MBNA would achieve annual earnings growth of 10%; (ii) the Company failed to disclose that increases in interest rates, which had commenced before the Class Period and continued throughout, were driving down the proper carrying value of the Company's interest-rate only strips, such that the value of the Company's reported assets were materially overstated; and (iii) the Company did not adjust as appropriate the assumptions and estimates used in determining the fair value of the interest-only strip receivable. As result, on April 21, 2005, MBNA was forced to reveal that, (i) it had to take almost a $207 million write down of its interest-only strip receivable; (ii) its first quarter income was down 93% year-over-year, including the restructuring charge; and (iii) it expected full year earnings to be significantly below the 10% growth objective. On July 6, 2007, Chief Judge Gregory Sleet denied defendants' motion to dismiss the amended complaint. *Baker v. MBNA Corp.*, **Cons. C.A. No. 05-cv-00272 (GMS) (D. Del Jul. 6, 2007) (Mem. Op.).**

**In re Molson Coors Brewing Co. Sec. Litig.,**
**Cons. C.A. No. 05-CV-00294 (GMS) (D. Del.)**

The Firm serves as liaison counsel on behalf of lead plaintiffs Drywall Acoustic Lathing and Insulation Local 675 Pension Fund, Metzler Investment GmbH and the members of the putative class in this securities class action brought on behalf of all persons who are, (i) former shareholders of Molson Coors ("Molson Coors") as a result of the February 9, 2005 merger of Molson by and into Coors; (ii) open market purchasers of Coors common stock from July 22, 2004 through February 9, 2005; and (iii) open market purchasers of Molson Coors common stock, from the completion of the merger through April 27, 2005, inclusive. Plaintiffs allege that Molson Coors made false and misleading statements, including: (i) the cost saving synergies represented by Molson Coors were impossible to achieve because, among other things, Coors' rapidly increasing distribution costs would adversely effect the potential cost saving synergies; (ii) Molson and Coors were already distributing each other's products, further reducing the possibility of cost saving synergies; (iii) the merger would actually incur significant post-merger expenses due to the expected exodus of Coors senior executives who would be paid millions of dollars in benefits; and (iv) Molson Coors would inherit Molson's Brazilian operations, which were an unmitigated failure that eventually necessitated a $500 million post-merger charge and the sale of Molson's Brazilian interests at a fraction of their cost. After extensive litigation efforts in both the United States and Canadian actions, in February 2008, all parties conducted arm's-length negotiations with the assistance of the Honorable Nicholas H. Politan (Ret.), resulting in an agreement-in-principle to settle the lawsuits.

# EXHIBIT B

**GLANCY BINKOW & GOLDBERG LLP**
ATTORNEYS AT LAW

New York Office

1801 AVENUE OF THE STARS, SUITE 311
LOS ANGELES, CALIFORNIA 90067

SAN FRANCICSO OFFICE

1430 BROADWAY
SUITE 1603
NEW YORK, NY 10018
TELEPHONE (212) 382-2221
FACSIMILE (212) 382-3944

————

TELEPHONE (310) 201-9150
FACSIMILE (310) 201-9160
info@glancylaw.com

ONE EMBARCADERO CENTER
SUITE 760
SAN FRANCISCO, CA 94105
TELEPHONE (415) 972-8160
FACSIMILE (415) 972-8166

**FIRM RESUME**

Glancy Binkow & Goldberg LLP has represented investors, consumers and employees in federal and state courts throughout the United States for sixteen years. Based in Los Angeles, California and with offices in New York, New York and San Francisco, California, Glancy Binkow & Goldberg has developed expertise prosecuting securities fraud, antitrust and complex commercial litigation. As Lead Counsel or as a member of Plaintiffs' Counsel Executive Committees, Glancy Binkow & Goldberg has recovered in excess of $1 billion for parties wronged by corporate fraud and malfeasance. The firm's efforts on behalf of individual investors have been the subject of articles in such publications as *The Wall Street Journal*, *The New York Times* and *The Los Angeles Times*.

Appointed as Lead or Co-Lead Counsel by federal judges throughout the United States, Glancy Binkow & Goldberg has achieved significant recoveries for class members, including:

In re Mercury Interactive Corporation Securities Litigation, USDC Northern District of California, Case No. 05-3395, in which Glancy Binkow & Goldberg served as Co-Lead Counsel and achieved a settlement valued at over $117 million.

In re Real Estate Associates Limited Partnership Litigation, USDC Central District of California, Case No. 98-7035 DDP, in which the firm served as local counsel and plaintiffs achieved a $184 million jury verdict after a complex six week trial in Los Angeles, California and later settled the case for $83 million.

In re Lumenis, Ltd. Securities Litigation, USDC Southern District of New York, Case No.02-CV-1989, in which Glancy Binkow & Goldberg served as Co-Lead Counsel and achieved a settlement valued at over $20 million.

<u>In re Heritage Bond Litigation</u>, USDC Central District of California, Case No. 02-ML-1475-DT, where as Co-Lead Counsel, Glancy Binkow & Goldberg recovered in excess of $28 million for defrauded investors and continues to pursue additional defendants.

<u>In re ECI Telecom Ltd. Securities Litigation</u>, USDC Eastern District of Virginia, Case No. 01-913-A, in which Glancy Binkow & Goldberg served as sole Lead Counsel and recovered almost $22 million for defrauded ECI investors.

<u>Jenson v. First Trust Corporation</u>, USDC Central District of Californaia, Case No. 05-cv-3124-ABC, in which the firm was appointed sole lead counsel and achieved an $8.5 million settlement in a very difficult case involving a trustee's potential liability for losses incurred by investors in a Ponzi scheme.  Kevin Ruf of the firm also successfully defended in the 9th Circuit Court of Appeals the trial court's granting of class certification in this case.

<u>Yaldo v. Airtouch Communications</u>, State of Michigan, Wayne County, Case No. 99-909694-CP, in which Glancy Binkow & Goldberg served as Co-Lead Counsel and achieved a settlement valued at over $32 million for defrauded consumers.

<u>In re Infonet Services Corporation Securities Litigation</u>, USDC Central District of California, Case No. CV 01-10456 NM, in which as Co-Lead Counsel, Glancy Binkow & Goldberg achieved a settlement of $18 million.

<u>In re Musicmaker.com Securities Litigation</u>, USDC Central District of California, Case No. 00-02018, a securities fraud class action in which Glancy Binkow & Goldberg was sole Lead Counsel for the Class and recovered in excess of  $13 million.

<u>In re ESC Medical Systems, Ltd. Securities Litigation</u>, USDC Southern District of New York, Case No. 98 Civ. 7530, a securities fraud class action in which Glancy Binkow & Goldberg served as sole Lead Counsel for the Class and achieved a settlement valued in excess of  $17 million.

<u>In re Lason, Inc. Securities Litigation</u>, USDC Eastern District of Michigan, Case No. 99 76079,  in which Glancy Binkow & Goldberg was Co-Lead Counsel and recovered almost $13 million for defrauded Lason stockholders.

<u>In re Inso Corp. Securities Litigation</u>, USDC District of Massachusetts, Case No. 99 10193, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of  $12 million.

<u>In re National TechTeam Securities Litigation</u> USDC Eastern District of Michigan, Case No. 97-74587, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of  $11 million.

In re Ramp Networks, Inc. Securities Litigation, USDC Northern District of California, Case No. C-00-3645 JCS, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement of nearly $7 million.

In re Gilat Satellite Networks, Ltd. Securities Litigation, USDC Eastern District of New York, Case No. 02-1510 CPS, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement of $20 million.

Taft v. Ackermans (KPNQwest Securities Litigation), USDC Southern District of New York, Case No. 02-CV-07951, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement worth $11 million.

Ree v. Procom Technologies, Inc., USDC Southern District of New York, Case No. 02CV7613, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement of $2.7 million.

Capri v. Comerica, Inc., USDC Eastern District of Michigan, Case No. 02CV60211 MOB, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement of $6.0 million.

Tatz v. Nanophase Technologies Corp., USDC Northern District of Illinois, Case No. 01C8440, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement of $2.5 million.

In re Livent, Inc. Noteholders Litigation, USDC Southern District of New York, Case No. 99 Civ 9425, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement of over $27 million.

Plumbing Solutions Inc. v. Plug Power, Inc., USDC Eastern District of New York, Case No. CV 00 5553 (ERK) (RML), a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement of over $5 million.

Glancy Binkow & Goldberg filed the initial landmark antitrust lawsuit against all of the major NASDAQ market makers and served on Plaintiffs' Counsel's Executive Committee in In re Nasdaq Market-Makers Antitrust Litigation, USDC Southern District of New York, Case No. 94 C 3996 (RWS), MDL Docket No. 1023, which recovered $900 million for investors in numerous heavily traded Nasdaq issues.

The firm currently serves as Lead or Co-Lead Counsel in numerous securities fraud and consumer fraud actions throughout the United States, including, among others:

<u>Senn v. Sealed Air Corporation</u>, USDC New Jersey, Case No. 03-cv4372, in which the firm acts as co-lead counsel (the case has tentatively settled).

<u>Shah v. Morgan Stanley Co.</u>,
USDC Southern District of New York, Case No. 03 Civ. 8761 (RJH)

<u>Lapin v. Goldman Sachs</u>,
USDC Southern District of New York, Case No. 03-0850-KJD

<u>Payne v. IT Group, Inc.</u>,
USDC Western District of Pennsylvania, Case No. 02-1927

<u>Oscar Private Equity Investments v. Holland (Allegiance Telecom Securities Litigation)</u>,
USDC Northern District of Texas, Case No. 3:-CV-2761-H

<u>Winer Family Trust v. Queen (Pennexx Securities Litigation)</u>,
USDC Eastern District of Pennsylvania, Case No. 2:03-cv-04318 JP

<u>In re ADC Telecommunications Inc. Securities Litigation</u>,
USDC District of Minnesota, Case No. 03-1194 (JNE/JGL)

<u>Porter v. Conseco, Inc.</u>,
USDC Southern District of Indiana, Case No. 02-1332 SEB

<u>In re Simon Transportation Services, Inc. Securities Litigation</u>,
USDC District of Utah, Case No. 2:98 CV 0863 K

The firm has also recently acted as Class Counsel in obtaining substantial benefits for shareholders in a number of actions, including:

<u>In re F & M Distributors Securities Litigation</u>,
Eastern District of Michigan, Case No. 95 CV 71778 DT (Executive Committee Member) ($20.25 million settlement)

<u>James F. Schofield v. McNeil Partners, L.P. Securities Litigation</u>,
California Superior Court, County of Los Angeles, Case No. BC 133799

<u>Resources High Equity Securities Litigation</u>,
California Superior Court, County of Los Angeles, Case No. BC 080254

The firm has served and currently serves as Class Counsel in a number of antitrust class actions, including:

In re Nasdaq Market-Makers Antitrust Litigation,
USDC Southern District of New York, Case No. 94 C 3996 (RWS), MDL Docket No. 1023

In re Brand Name Prescription Drug Antitrust Litigation,
USDC Northern District of Illinois, Eastern Division, Case No. 94 C 897

The firm has served and currently serves as Class Counsel in a number of wage and hour class actions, including:

Smith v. L'Oreal, Los Angeles Superior Court, Case No. BC 284690, in which firm partner Kevin Ruf successfully argued before the California Supreme Court and achieved the reversal of lower court holdings which could have curtailed employee rights to prompt payment of wages.

Mathews v. American Laser Centers, USDC Eastern District of Michigan, Case No. 2:08-cv-10638, in which the firm represents employees of ALC who contend they are entitled to unpaid overtime and other benefits.

Baldwin v. Johnny Rockets, Los Angeles Superior Court, Case No. BC 385539, in which the firm represents a class of restaurant managers who contend they are entitled to overtime and other benefits because they were improperly classified by their employer as "exempt" from such benefits.

Jenkin v. Sunglass Hut, USDC Central District of California, Case No. CV08-5394, in which the firm represents Sunglass Hut employees who contend they were denied meal and rest breaks and other compensation.

Bousquet v. Cerritos Ford, Los Angeles Superior Court, Case No. BC 354026, in which the firm represents mechanics claiming unpaid overtime.

Paredes v. Pacific Ford, Los Angeles Superior Court, Case No. BC 372598, in which the firm represents mechanics claiming unpaid overtime.

Glancy Binkow & Goldberg LLP has been responsible for obtaining favorable appellate opinions which have broken new ground in the class action or securities fields, or which have promoted shareholder rights in prosecuting these actions. Glancy Binkow & Goldberg successfully argued the appeals in a number of cases.

In Smith v. L'Oreal, 39 Cal.4th 77 (2006), firm partner Kevin Ruf established groundbreaking law when the California Supreme Court agreed with the firm's position that waiting penalties under the California Labor Code are available to *any* employee after termination of employment, regardless of the reason for that termination.

Other notable firm cases are: <u>Silber v. Mabon I</u>, 957 F.2d 697 (9th Cir. 1992) and <u>Silber v. Mabon II</u>, 18 F.3d 1449 (9th Cir. 1994), which are the leading decisions in the Ninth Circuit regarding the rights of opt-outs in class action settlements. In <u>Rothman v. Gregor</u>, 220 F.3d 81 (2d Cir. 2000), Glancy Binkow & Goldberg won a seminal victory for investors before the Second Circuit Court of Appeals, which adopted a more favorable pleading standard for investors in reversing the District Court's dismissal of the investors' complaint. After this successful appeal, Glancy Binkow & Goldberg then recovered millions of dollars for defrauded investors of the GT Interactive Corporation. The firm also argued <u>Falkowski v. Imation Corp.</u>, 309 F.3d 1123 (9th Cir. 2002), *as amended*, 320 F.3d 905 (9th Cir. 2003) and favorably obtained the substantial reversal of a lower court's dismissal of a cutting edge, complex class action initiated to seek redress for a group of employees whose stock options were improperly forfeited by a giant corporation in the course of its sale of the subsidiary at which they worked. The revived action is currently proceeding in the California state court system.

The firm is also involved in the representation of individual investors in court proceedings throughout the United States and in arbitrations before the American Arbitration Association, National Association of Securities Dealers, New York Stock Exchange, and Pacific Stock Exchange. Mr. Glancy has successfully represented litigants in proceedings against such major securities firms and insurance companies as A.G. Edwards & Sons, Bear Stearns, Merrill Lynch & Co., Morgan Stanley, PaineWebber, Prudential, and Shearson Lehman Brothers.

One of firm's unique skills is the use of "group litigation" - the representation of groups of individuals who have been collectively victimized or defrauded by large institutions. This type of litigation brought on behalf of individuals who have been similarly damaged often provides an efficient and effective economic remedy that frequently has advantages over the class action or individual action devices. The firm has successfully achieved results for groups of individuals in cases against major corporations such as Metropolitan Life Insurance Company, and Occidental Petroleum Corporation.

Glancy Binkow & Goldberg LLP currently consists of the following attorneys:

### THE FIRM'S PARTNERS

**LIONEL Z. GLANCY**, a graduate of the University of Michigan Law School, is the founding partner of the firm. After serving as a law clerk for United States District Judge Howard McKibben, he began his career as an associate at Patterson Belknap Webb & Tyler LLP, concentrating in securities litigation. Thereafter, he started a boutique law firm specializing in securities litigation, and other complex litigation, from the Plaintiff's perspective. Mr. Glancy has established a distinguished career in the field of securities litigation over the last fifteen years, appearing as lead counsel on behalf of aggrieved investors in securities class action cases throughout the country. He has appeared and argued before dozens of district courts and several appellate courts, and has recovered billions of dollars in settlement proceeds for large classes of shareholders. Well known in securities law, he has lectured on its developments and practice at CLE seminars and law schools.

**PETER A. BINKOW**, a partner in Glancy Binkow & Goldberg, was born in Detroit, Michigan on August 16, 1965. Mr. Binkow earned his degree in English Literature from the University of Michigan in 1988 and attended law school at the University of Southern California (J.D., 1994). Mr. Binkow joined the Law Offices of Lionel Z. Glancy upon graduation and became a partner in 2002.

Mr. Binkow has prosecuted lawsuits on behalf of consumers and investors in state and federal courts throughout the United States. He has served as Lead or Co-Lead Counsel in many class action cases, including In re Mercury Interactive Corp Securities Litigation ($117.5 million recovery), In re Lumenis Ltd Securities Litigation ($20.1 million recovery), In re Heritage Bond Litigation ($28 million recovery), In re National Techteam Securities Litigation ($11 million recovery), In re Credit Acceptance Corporation Securities Litigation ($2.5 million recovery), In re Lason Inc. Securities Litigation ($12.68 million recovery), In re ESC Medical Systems, Ltd. Securities Litigation ($17 million recovery) In re GT Interactive Securities Litigation ($3 million recovery) and many others. Mr. Binkow has prepared and/or argued appeals before the Ninth Circuit, Sixth Circuit and Second Circuit Courts of Appeals.

Mr. Binkow is admitted to practice before the state of California, the United States District Courts for the Central, Northern and Southern Districts of California, the United States District Court for the Eastern District of Michigan and the Ninth Circuit Court of Appeals. He is a member of the Los Angeles County Bar Association and the American Bar Association.

**MICHAEL GOLDBERG**, a partner in Glancy Binkow & Goldberg, specializes in federal securities, federal and state antitrust, and consumer fraud class action lawsuits. He has successfully litigated numerous cases which resulted in multi-million dollar recoveries for investors, consumers and businesses.

Mr. Goldberg was born in New York on April 27, 1966. He earned his B.A. degree in 1989 from Pitzer College - The Claremont Colleges, and his J.D. degree in 1996 from Thomas M. Cooley Law School. After graduation from law school, Mr. Goldberg joined the Law Offices of Lionel Z. Glancy and became a partner of Glancy Binkow & Goldberg in 2003. He was admitted to both the California and Florida bars in 1997 and is admitted to practice in numerous courts.

**SUSAN G. KUPFER**, a partner of Glancy Binkow & Goldberg LLP, joined the firm in 2003, where she established its antitrust practice. She is a native of New York City and received her A.B. degree from Mount Holyoke College in 1969 and her J.D. from Boston University School of Law in 1973. She did graduate work at Harvard Law School. In 1977, she was named Assistant Dean and Director of Clinical Programs at Harvard, where she supervised that program of legal practice and taught its related academic components: Introduction to Advocacy (a NITA-style workshop), Lawyering Process and Professional Responsibility.

For much of her legal career, Ms. Kupfer has been a professor of law. She subsequently taught at Hastings College of the Law, Boston University School of Law, Golden Gate University School of Law and Northeastern University School of Law. From 1991 to 2002, she was a lecturer on law at

University of California, Berkeley, Boalt Hall, teaching Civil Procedure and Conflict of Laws. Her areas of academic expertise are Civil Procedure, Federal Courts, Conflict of Laws, Constitutional Law, Legal Ethics and Jurisprudence. Her publications include articles on federal civil rights litigation, legal ethics and jurisprudence. She has also taught various aspects of practical legal and ethical training, including trial advocacy, negotiation and legal ethics, to both law students and practicing attorneys.

Ms. Kupfer previously served as corporate counsel to The Architects Collaborative in Cambridge and San Francisco and was the executive director of the Massachusetts Commission on Judicial Conduct. She returned to the practice of law in San Francisco with Morgenstein & Jubelirer and Berman DeValerio Pease Tabacco Burt & Pucillo before joining the Glancy Firm. Her practice is concentrated in antitrust, securities and consumer complex litigation. She has been a member of the lead counsel team which achieved significant settlements in the following cases: In re Sorbates Antitrust Litigation ($96.5 million settlement), In re Pillar Point Partners Antitrust Litigation ($50 million settlement), In re Critical Path Securities Litigation ($17.5 million settlement).

Ms. Kupfer is a member of the Massachusetts and California State Bars and the United States District Courts for the Northern, Central and Southern districts of California, the District of Massachusetts, the First and Ninth Circuits Courts of Appeal and the U.S. Supreme Court. She was named one of Northern California's Super Lawyers of the Year in 2004, 2005, and 2006 in antitrust litigation.

Ms. Kupfer is currently serving in leadership positions in the following cases:

In re Korean Air Lines Co., Ltd. Antitrust Litigation, U.S.D.C., Central District of California, MDL 1891, No. 07-5107, Interim Co-Lead Counsel

In re: Urethane Antitrust Litigation, U.S.D.C., District of Kansas, No. 2:04-md-01616, Co-Lead Counsel.

In re: Western States Wholesale Natural Gas Antitrust Litigation, U.S.D.C., District of Nevada, No. 2:03-cv-01431, Co-Lead Counsel.

Sullivan et al v. DB Investments, Inc., et al., U.S.D.C, District of New Jersey, No. 3:04-cv-02819, Counsel for Reseller Subclass.

**NEAL A. DUBLINSKY** a partner in Glancy Binkow & Goldberg LLP, was born in Flushing, New York on January 15, 1963. He earned his undergraduate degree from Yeshiva University in 1984, graduating *summa cum laude*, (highest-ranking graduate of his class) and was the recipient of the Dean Isaac Bacon Award for Excellence in the Humanities. Mr. Dublinsky earned his J.D. from New York University School of Law in 1987 where he participated in the Consumer Protection Clinical Program under renowned Professor Anthony G. Amsterdam. Mr. Dublinsky was admitted to the state bar of California in 1988.

Mr. Dublinsky played a strong part in the Firm's successful resolution of the aforementioned matters of In re ESC Medical Systems, Ltd. Securities Litigation, USDC Southern District of New York, Case No. 98 Civ. 7530 and In re Lason, Inc. Securities Litigation, USDC Eastern District of Michigan, Case No. 99 76079. The published opinions in which Mr. Dublinsky has played a primary role include: City of Sterling Heights Police and Fire Retirement System v. Abbey Nat., PLC, --- F.Supp.2d ----, 2006 WL 846261 (S.D.N.Y., Mar 31, 2006) (NO. 05 CIV. 2141 (DC)); Falkowski v. Imation Corp., 309 F.3d 1123 (9th Cir. 2002), *as amended*, 320 F.3d 905 (9th Cir. 2003); Falkowski v. Imation Corp., 132 Cal.App.4th 499, 33 Cal.Rptr.3d 724 (Cal.App. 2005), *reh. den.* (Sep 27, 2005), *rev. den.* (Nov 30, 2005), and; Mirpuri v. ACT Mfg., Inc., 212 F.3d 624 (1st Cir. 2000). In addition, he played a primary role in Caprin v. Simon Transportation Services, Inc., 99 Fed.Appx. 150 (not selected for publication), 2004 WL 326995 (10th Cir. 2004). He also was an important participant in Rothman v. Gregor, 220 F.3d 81 (2nd Cir. 2000) and Shah v. Meeker, 435 F.3d 244 (2nd Cir. 2006).

**KEVIN F. RUF** a partner in Glancy Binkow & Goldberg LLP, was born in Wilmington, Delaware on December 7, 1961. Mr. Ruf graduated from the University of California at Berkeley in 1984 with a B.A. in Economics and earned his J.D. from the University of Michigan in 1987. Mr. Ruf was admitted to the State Bar of California in 1988. Mr. Ruf was an associate at the Los Angeles firm Manatt Phelps and Phillips from 1988 until 1992, where he specialized in commercial litigation and was a leading trial lawyer among the associates there. In 1993 he joined the firm Corbin & Fitzgerald in order to gain experience in criminal law. There he specialized in white collar criminal defense work, including matters related to National Medical Enterprises, Cynergy Film Productions and the Estate of Doris Duke. Mr. Ruf joined Glancy Binkow & Goldberg in 2001 and has taken a lead trial lawyer role in many of the firm's cases. In 2006, Mr. Ruf argued before the California Supreme Court in the case *Smith v. L'Oreal* and achieved a unanimous reversal of the lower court rulings; the case established a fundamental right of all California workers to immediate payment of all earnings at the conclusion of employment. In 2007, Mr. Ruf took an important case before the Ninth Circuit Court of Appeals, convincing the Court to affirm the lower court's certification of a class action in a fraud case (fraud cases have traditionally faced difficulty as class actions because of the requirement of individual reliance). Mr. Ruf has extensive trial experience, including jury trials, and considers his courtroom and oral advocacy skills to be his strongest asset as a litigator. Mr. Ruf currently acts as the Head of the Firm's Labor and Consumer Practice, and has extensive experience in Securities cases as well. Mr. Ruf also has experience in real estate law and has been a Licensed California Real Estate Broker since 1999.

## OF COUNSEL

**ROBIN BRONZAFT HOWALD**, a native of Brooklyn, New York, returned home in 2001 to open the firm's New York City office.  Ms. Howald graduated *magna cum laude* from Barnard College in 1980, with a B.A. in psychology. In 1983, she received her J.D. from Stanford Law School, where she served as an Articles Editor for the Stanford Law Review.  In addition to her current focus on securities fraud and consumer class action matters, during her 20-year career Ms. Howald has handled cases in many different practice areas, including commercial disputes, professional malpractice, wrongful termination, bankruptcy, patent and construction matters.  As outside counsel for the City of Torrance, California, she also handled a number of civil rights and land use matters, as well as a ground-breaking environmental action concerning Mobil Oil's Torrance refinery.  Ms. Howald has experience in pre-trial and trial procedure and has successfully prosecuted post-trial motions and appeals.

Mrs. Howald is a member of the bar of both California (1983) and New York (1995), and is admitted to practice in all federal judicial districts in California, the Southern and Eastern Districts of New York, and the United States Supreme Court.  She co-authored "Potential Tort Liability in Business Takeovers" (*California Lawyer*, September 1986), was a speaker and contributing author at the Eighth Annual Current Environmental and Natural Resources Issues Seminar at the University of Kentucky College of Law (April 1991), and served as a Judge Pro Tem for the Los Angeles County Small Claims Court (1996-1997).  Married in 1985, Mrs. Howald and her husband have two sons. An avid runner, Mrs. Howald has completed six marathons.

**FREDERICK W. GERKENS, III**, an of counsel to Glancy Binkow & Goldberg LLP, graduated from Fordham University Law School *cum laude* in 1997 with an LL.M. in Corporate, Banking, and Finance law.  Mr. Gerkens received his J.D. degree from New York Law School, graduating *cum laude* in 1995, and an M.B.A. from Temple University in 1978.  Mr. Gerkens received his undergraduate degree from Temple University (B.A. Psychology, *cum laude*) in 1975.  Mr. Gerkens also is a Certified Public Accountant (New York, 1980).

After graduating law school, Mr. Gerkens was employed at the United States Securities and Exchange Commission, Division of Market Regulation, and thereafter practiced principally in securities class actions, complex commercial litigation, and employment law, and was a partner at another prominent class action litigation firm.

Prior to law school, Mr. Gerkens was employed at a major Wall Street investment firm as director of financial reporting and manager of regulatory reporting (1985-1992).  Prior to that, Mr. Gerkens was an auditor employed by recognized public accounting firms, with mostly financial institution clientele (1978-1985).

Mr. Gerkens is a member of the American Bar Association (Litigation Section), the Association of the Bar of the City of New York and the American Institute of Certified Public Accountants.

Mr. Gerkens played a prominent role in prosecuting several securities class actions to successful conclusion, resulting in settlements to the respective shareholder classes, including In re BankOne Shareholders Litig., No. 00-CV-0880 (N.D. Ill.); In re UNUMProvident Sec. Litig., No. 99-CV-301 (D. Me.); In re Allied Products Sec. Litig., No. 99-CV-3597 (N.D. Ill.); In re Laidlaw Stockholders Litig., No. 3:00-CV-0855-17 (D.S.C.); In re Alliance Pharm. Corp. Sec. Litig., No. 01-CV-1674 (S.D.N.Y.); In re Warnaco Group, Inc. Sec. Litig. (II), No. 01-CV-3346 (S.D.N.Y.); In re Rediff Inc. Sec. Litig., No. 01-CV-3020 (S.D.N.Y.); In re Abercrombie & Fitch Co. Sec. Litig., M21-83 (S.D.N.Y.); In re Global Crossing, Inc. Sec. Litig., No. 02-CV-0910 (S.D.N.Y.); In re Amazon.com, Inc. Sec. Litig., No. C-01-0358-L (W.D. Wash.); In re Harnischfeger, Inc. Sec. Litig., Nos. 98-C-0524, 99-C-0598 (E.D. Wis.); In re American Bank Note Holographics, Inc. Sec. Litig., No. 99-C-0598 (S.D.N.Y.); and In re Avista Corp. Sec. Litig., No. CV-02-0328 (E.D. Wash.).

Mr. Gerkens is admitted to practice in New York (1995), the United States Supreme Court, the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth and Ninth Circuits, and the United States District Courts for the Southern and Eastern Districts of New York and the Eastern District of Wisconsin.

**JALA AMSELLEM** has been engaged in the private practice of civil ligation for over ten years. She has handled a broad variety of cases in the areas of corporate commercial, family law, personal injury and entertainment litigation. Jala is also a former legal writing professor who taught legal skills for twelve years. In her last academic position she was the Associate Director of the legal writing program at The George Washington School of Law. Recently, Jala founded The Bar Coach, a company dedicated to assisting bar takers pass the California Bar Exam.

Jala received her undergraduate degree from New York University in 1982 and her J.D. from Touro Law School in 1985. At Touro, Jala was the Senior Editor of the law review. Jala is admitted to the bars of California, New York, New Jersey, Michigan and the District of Columbia.

**SYLVIE KULKIN KERN** has been a commercial litigator for more than twenty years. She began her legal career as a law clerk to Justice John Holmdahl of the California Court of Appeal, First District, and then practiced law in San Francisco at Severson, Werson, Berke & Melchior (1985-1988); Brobeck Phleger & Harrison (1988-1993); and Morrison & Foerster LLP (1995-2004), where she was Of Counsel on the firm's securities litigation team. She joined Glancy Binkow & Goldberg LLP in 2005. In addition to her work in the securities field and her current focus on antitrust litigation, Ms. Kern has handled numerous complex commercial cases in state and federal court in the transportation, insurance, banking, real estate, and telecommunications industries, at both the law-and-motion and appellate stages.

Originally from France, Ms. Kern graduated from the University of California at Los Angeles in 1973, Magna cum Laude and Phi Beta Kappa with dual degrees in French and Political Science. She obtained her master's degree from the Johns Hopkins School of Advanced International Studies in 1975, and a law degree from Hastings College of the Law, where she served on the Hastings

International and Comparative Law Review, in 1983.  She speaks French, Spanish and Italian, and has lived or traveled in over thirty countries.

## ASSOCIATES

**MARC L. GODINO** has extensive experience successfully litigating complex, class action lawsuits as a plaintiffs' lawyer. Mr. Godino has played a primary role in cases resulting in settlements of more than $100 million. He has prosecuted securities, derivative, ERISA, and consumer cases throughout the country in both State and Federal court as well as represented defrauded investors at NASD arbitrations.

While an associate with Stull Stull & Brody, Mr. Godino was one of the two primary attorneys involved in Small v. Fritz Co., 30 Cal. 4th 167 (April 7, 2003) in which the California Supreme Court created new law in the state of California for shareholders that held shares in detrimental reliance on false statements made by corporate officers. The decision was widely covered by national media including *The National Law Journal*, *Los Angeles Times*, *New York Times*, and the *New York Law Journal*, among others and was heralded as a significant victory for shareholders.

Other published decisions include: In re 2TheMart.com Securities Litigation, 114 F.Supp 2d 955 (C.D.Cal. 2002); In re Irvine Sensors Securities Litigation, 2003 U.S. Dist. LEXIS 18397 (C.D.Cal. 2003); Brown v. Computerized Thermal Imaging Inc., 2002 WL 31109563 (D.Or. 2002).

Mr. Godino received his undergraduate degree from Susquehanna University with a bachelor of science degree in Business Management.  He received his J.D. from Whittier Law School in 1995.

Mr. Godino is admitted to practice before the state of California, the United States District Courts for the Central, Northern and Southern Districts of California, the District of Colorado, and the Ninth Circuit Court of Appeals.

**DALE MacDIARMID** is a native of  Los Angeles, California. He holds a B.A. in Journalism (with Distinction) from the University of Hawaii, and a J.D. from Southwestern University School of Law, where he was a member of the Board of Governors of the Trial Advocacy Honors Program. He is admitted to practice in California, before the United States District Courts for the Southern, Central and Northern Districts of California and the District of Colorado.  Dale is a member of Kappa Tau Alpha, the national journalism honor society, and before joining Glancy Binkow & Goldberg he was a writer and editor for newspapers and magazines in Honolulu and Los Angeles.

**KARA M. WOLKE** graduated summa cum laude with a B.S.B.A. in Economics from The Ohio State University in 2001. Kara earned her J.D. (with honors) from Ohio State in May, 2005, where she was active in Moot Court and received the Dean's Award for Excellence for each of her three years. In 2005, she was a finalist in a national writing competition co-sponsored by the American Bar Association and the Grammy® Foundation. (7 Vand. J. Ent. L. & Prac. 411). Kara joined

Glancy Binkow & Goldberg in the fall of 2005 and was admitted to the State Bar of California in January, 2006.

**ANDY SOHRN** joined Glancy Binkow & Goldberg LLP in 2006. He was admitted to the California Bar in January 2006 after receiving his J.D. from the University of California Los Angeles School of Law in May 2005. While attending law school, Andy was the Managing Editor of the Pacific Basin Law Journal, participated in Moot Court and was a Teaching Assistant for the Lawyering Skills program. He also holds a B.A. in Economics and Mathematics from Yale University (class of 2002).

**OLGA MIROSHNICHENKO** joined Glancy Binkow and Goldberg LLP in 2009. She earned a B.A. degree in European History and Political Science in 2003 from Barnard College, Columbia University. She received her J.D. from Brooklyn Law School in 2007. While attending law school, Olga received the 2006 Charles Revson Law Student Public Interest Fellowship and served as secretary for the Brooklyn Law Students for the Public Interest. As a law student, she successfully represented an asylum seeker with Brooklyn Law School's prestigious Safe Harbor Clinic. Olga was admitted to the California State Bar in 2008.

**COBY VINK** joined Glancy Binkow and Goldberg in 2010. Coby was a Regent's Scholar at the University of California, Santa Barbara, and holds a B.A. in Business Economics and Political Science. She received her J.D. from the University of Southern California, Gould School of Law. During law school, Coby was an editor of the Hale Moot Court Honors Program, the President of the International Law and Relations Organization, and an extern for Mental Health Advocacy Services in Los Angeles, California. Coby was admitted to the California State Bar in 2009.

# EXHIBIT C

## BOUCHARD, KLEINMAN & WRIGHT, P.A. FIRM RESUME

The four lawyers in our firm handle almost exclusively civil litigation cases.  We specialize in insurance defense work, which accounts for approximately 80% or more of our case load.  We take an occasional plaintiff's case and represent private corporate and personal defendants in litigation matters as well.  The amount of work not related to civil litigation (e.g. an occasional will or pro bono divorce case) is insignificant.  Our concentration on civil litigation in general and insurance defense work in particular allows us to provide more focused, competent and responsive services to our insurance clients.

We work for approximately 40 different carriers, from some of the smaller specialized carriers (e.g. Ladder Management Services, Phenix Mutual) to the larger national carriers (e.g. State Farm, Allstate, Prudential, Wausau, AAA, Utica).  Our files range from the most complex high exposure cases – medical malpractice, product liability, catastrophic injure, and death cases – to the most routine rear end accident and slip and fall cases.  We have defended a number of class action medical products cases as well.  Of course, we also handle a significant amount of workers' compensation cases, also ranging widely in exposure and complexity.  Regardless of the client or the size of the case, we strive to provide the quality and professionalism of work associated with the largest and most successful litigation firms in the State of New Hampshire, while maintaining a small firm outlook and the personal attention of the principal attorney responsive for the file.  We strive in every case to strike the appropriate balance between aggressive representation of your insureds' interests and cost-consciousness, never forgetting that the ultimate decision on where that balance will ultimately be struck is to be made by the carrier and the insured.  We take particular pride in our efforts to communicate relevant information derived during the discovery process clearly and comprehensively.  We strive to involve our clients in every step of the discovery and evaluation process.  In this way, we attempt to embody our motto, "professionalism with a personal touch".

The lawyers in this office are an interesting mix, well suited to handling a variety of cases.  Kenneth Bouchard handles or directly supervises many of the technically complex cases and those involving heavy damages exposure, including medical malpractice, products liability, and paralysis cases.  He has represented a number of self-insured major corporations.  Ken has a Bachelor's degree in physics and mathematics (double major) from Tufts, a Masters degree in engineering and applied science from Yale, and a law degree from Boston College Law School.  He has been in insurance defense litigation since beginning the practice of law in 1976, is one of a half a dozen or so board certified trial attorneys in New Hampshire, and has the highest "AV" rating in Martindale-Hubbell.  Ken has developed a special expertise in cross-examining plaintiffs' economists, particularly relative to wrongful death cases, and published an article on this subject in "For the Defense," the Defense Research Institute publication.

Paul Kleinman is a graduate of the Boston University School of Law and served as a Superior Court law clerk in 1986-87.  He initially developed an expertise in workers' compensation cases, trying hundreds of cases before the Labor Department.  Presently, he tries a large number of automobile and premises liability cases.  He also handles significantly more complex cases including pollution contamination and medical and legal malpractice.  Paul has

also developed a specialty in the area of securities litigation.

Ken and Paul formed Bouchard & Kleinman in 2001. Both were partners in its forerunner, Bouchard & Mallory, and have not only maintained its excellent reputation but improved it by increasing cost efficiency, remaining innovative and always being responsive to the needs of the people they serve. Bouchard & Kleinman maintains offices in both Manchester, New Hampshire and Hampton, New Hampshire. It provides effective legal advocacy throughout New Hampshire and Massachusetts.

Nick Wright is a graduate of Grinnell College in Grinnell, Iowa and Franklin Pierce Law Center in Concord, New Hampshire. Before joining Bouchard & Kleinman, he worked as a community worker in Belfast, Northern Ireland and as a research assistant in the House of Commons in London, England. He has handled numerous workers' compensation cases, both settled and tried numerous bodily injury and property damage defense cases and also provided policy interpretation opinions on a variety of declaratory judgments. Additionally, he has been successful in garnering a large number of subrogation recoveries for many insurance companies, annually returning hundreds of thousands of dollars to insurance companies and their policyholders.

This past year, Shenanne Tucker joined the firm of Bouchard & Kleinman, after graduating from New England School of Law in Boston. Shenanne brings a wide variety of experience to the legal profession. Prior to working for Bouchard & Kleinman, P.A., Shenanne practiced in the areas of Estate Planning, Business Planning, Tax Litigation and Appeals. Since joining Bouchard & Kleinman, she has become very experienced in handling cases involving Personal Injury, Property Damage and Landlord/Tenant matters.

We employ two extremely capable paralegals, one being a nurse paralegal, that work closely with the attorneys to accomplish the routine but ever-important tasks of document discovery and file organization. We have developed a computer program that allows our paralegals to store and sort by date abstracts of medical records, greatly reducing the time the attorneys spend re-acquainting themselves with medical histories. We are committed to using paralegals whenever appropriate to hold down legal expenses.

Our fee structure for defense cases is adjusted dependent on the number of cases handled for any given carrier or third party administrator, but in any matter, remains highly competitive with other firms providing legal services for insurance companies. We handle subrogation cases on either an hourly rate or a contingency basis, depending on the client's choice. The contingency rate follows the industry standard one-third, exclusive of costs.

We are well aware that cost-consciousness is critical to developing a successful long-term relationship with any carrier. We pride ourselves on avoiding unnecessary discovery and in ensuring client participation in all decision making concerning activities that will involve significant fees or expenses. We have also been at the forefront of the ADR movement, seeking to identify cases appropriate for mediation or arbitration and recommending that this occur at the

earliest advantageous point in the litigation process.

       Should you wish to learn more about our firm, please take a moment to view our website at [www.bestnhlaw.com](www.bestnhlaw.com).

**BOUCHARD, KLEINMAN & WRIGHT, P.A.**
**CLASS ACTION/MULTIDISTRICT CASE LIST**

1.    Liaison Counsel
      Robert Markewich v. William Tallman, Public Service Co. of New Hampshire, et al.
      U.S. District Court
      Docket No. C-84-220-D


2.    Liaison Counsel and Lead Trial Counsel
      Sheila Baum and Walter Baum, et al. v. Centronics Data Computer Corporation, et al.
      U.S. District Court
      Docket No. C-85-363-L

3.    Liaison Counsel
      Donald A. Benjamin, et al. v. BankEast Corporation and Walter N. DeWitt
      U.S. District Court
      Docket No. C-90-38-SD


4.    Liaison Counsel
      Mishan Serabian, et al. v. Amoskeag Bank Shares, Inc., et al.
      U.S. District Court
      Docket No. C-90-85-SD

5.    Liaison Counsel
      Peter L. Kennard and Robert Fox v. Velcro Industries, et al
      Hillsborough County Superior Court - Northern District
      Docket No. 90-C-2419

6.    Liaison Counsel
      Abraham Greenberg, et al. v. Howtek, Inc., et al.
      U.S. District Court
      Docket No. C-91-11-L

7.    Counsel for Burnham Corporation
      Denis Labbe and Yvan Labbe as Executors of the Estate of Romeo Labbe and Giselle Labbe,
      Individually v. BURNHAM CORPORATION, Pittsburgh Corning Corp., Owens-Corning
      Fiberglas Corp., et al.
      U.S. District Court
      Docket Number C-95-530-SD
      Multidistrict Asbestos Case

8.    Liaison Counsel
      Kenneth M. Williams, et al. v. Cabletron Systems, et al.
      U.S. District Court
      Docket No. C-97-542-SD

9.  Lead Counsel
    Michael Guglielmo, Sr., Lisa Ballas, Christine Morris, Joseph Conroy, Thomas Coronna v.
    Worldcom AKA MCI Worldcom Communications; ILD Telecommunications; ILD
    Teleservices, Inc.
    Rockingham County Superior Court
    Docket Number: 00-C-0275

10. Local Counsel
    Bradford Atwater and Laurie Atwater v. VHA Inc., VHA of New England, Inc., VHA of New
    England Enterprises, Inc., American Health Products Corporation, et al.
    Sullivan County Superior Court
    Docket No. 00-C-0019
    In Re: Latex Product Liability Litigation
    Docket No. 98-C-0364
    Multidistrict Litigation Suit

11. Local Counsel
    Diego O. Lorenzo v. Kiwi Brands and Sara Lee Corporation
    U.S. District Court
    Docket No. 02-CV-00474-B

12. Local Counsel
    Marvin Overby, et al. v. Tyco International Ltd, et al.
    ERISA Class Action Suit
    U.S. District Court
    02-CV-1357-B
    MDL Docket No. 02-1335-B

13. Local Counsel
    Mark and Julie Cyr p/n/f of Matthew James Cyr; Donna Lee McKinley p/n/f of Antonio
    Francisco Saavedra; and Kelly O'Clair p/n/f of Michael J. O'Clair v. SIGMA CHEMICAL
    COMPANY, ALDRICH CHEMICAL, et al.
    Our File Name: KCYRSIG
    Docket Number: 01-C-663

14. Liason Counsel
    Mary Lou Puls and Douglas E. Puls v. Wyeth, Inc. Wyeth Pharmaceuticals, Inc.
    Warner-Lambert Company, Parke-Davis, Division of Warner-Lambert Company, and
    PFIZER, INC. AS SUCCESSOR IN INTEREST TO WARNER-LAMBERT COMPANY
    In Re Preempro Products Liability Litigation (MDL 1507)
    Our File Name: KPULPFI
    Docket Number: 1: 03-532